## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| ANTWON LANIER, | : | Case No. 04:12 CV 1902 |
| Petitioner, | : | |
| vs. | : | |
| ED SHELDON, WARDEN, | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Respondent. | : | |

### I. INTRODUCTION

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending are the Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254 and Respondent's Return of Writ (Docket Nos. 1 & 8).  For the reasons set forth below, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

### II. STATEMENT OF FACTS.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, the determination of factual issues made by a State court shall be presumed to be correct.  28 U. S. C. § 2254(d)(1) (Thomson Reuters 2013).

This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records.  *Hardaway v. Withrow,* 305 F.3d 558, 563 (6th Cir. 2002) (*citing Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir.2001) (*citing Sumner v. Mata*, 101 S.Ct. 764, 768-769 (1981)).  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  *Id.* (*citing* 28 U.S.C. § 2254(e)(1)).

In the instant case, the following facts set forth by the Court of Appeals of Ohio, Seventh District, Summit County, are presumed correct:

> This case revolved around crimes committed against Sierra Slaton.  The state's theory of the case was that Petitioner was upset with Ms. Slaton's boyfriend, Jason Baty.  A few days prior to Ms. Slaton's death, Baty, Petitioner, Antonio Jackson and Antwain Blackmon went to Canton, Ohio.  While in Canton, Petitioner and Baty had a disagreement about leaving.  Petitioner made direct threats against Baty.  When they returned to Youngstown, Baty informed Petitioner that he did not want to be his friend and wanted to have nothing to do with him.  Baty's cellular phone then went missing.

> On the day of the crimes, Petitioner had Baty's cellular phone when Ms. Slaton called the phone looking for Baty.  Petitioner told Ms. Slaton that Baty was with another woman and that he knew where Baty was at.  Later that night or the early hours of the next day, Ms. Slaton met up with Petitioner, Jackson and Blackmon wanting to go to Baty's location.  They all got in Ms. Slaton's car and headed toward the Red Room, a bar in Youngstown.

> Prior to getting to the Red Room, Jackson pointed a gun at Ms. Slaton and told her to stop the car.  He pulled her out of the car at the South Side Park and dragged her into the woods.  After awhile, Petitioner went into the woods.  Later, Jackson came out of the woods dragging a hysterical Ms. Slaton who was not fully dressed.  Petitioner was walking beside them.  Ms. Slaton was then put in the car, and Blackmon drove to his aunt's house to get another gun and then drove to McKelvey Lake.  During this ride, Ms. Slaton was begging for her life and said they did not have to kill her.  In response to that, Petitioner told Jackson that Jackson knew what he had to do and that it was too late.  At the lake, Jackson got Ms. Slaton out of the car and dragged her down into an embankment.  Blackmon then heard gunshots.  When Jackson got back into the car, Petitioner asked him if it was done.  Blackmon testified that Jackson and Petitioner had guns during the crimes, however, he testified that Petitioner never displayed his gun.

2

Ms. Slaton's body was found two days later in McKelvey Lake.  The autopsy revealed that Ms. Slaton was shot in the head multiple times, shot in the abdomen once and shot in the thigh twice. A rape kit was performed and seminal fluid was present on the vaginal swab taken from Ms. Slaton's body.  Y-STR testing[1] on the vaginal swab and samples taken from Jackson and Petitioner, excluded Jackson and his patrilineal line, but Petitioner and his patrilineal line could not be excluded.

*State v. Lanier*, 2010 WL 5541690, *2 -*3 (2010)

### III. PROCEDURAL BACKGROUND.

#### A.     INDICTMENT.

On June 29, 2006, the jurors of the Grand Jury of the State of Ohio, Mahoning County,

Ohio, returned a six-count INDICTMENT as to Petitioner:

| COUNTS | OFFENSES | STATUTORY VIOLATIONS | SPECIFICATIONS |
|---|---|---|---|
| 1 | Aggravated murder | OHIO REV. CODE § 2903.01(A)(F) | (1) The offense was committed while Petitioner was committing or attempting to commit or fleeing immediately after committing or attempting to commit kidnaping, rape, or aggravated robbery and Petitioner was the principal offender in the commission of the aggravated murder or if not the principal offender, committed the aggravated murder with prior calculation and design, a violation of OHIO REV. CODE § 2929.04(A)(7). (2) Firearm under OHIO REV. CODE § 2941.145(A). |
| 2 | Aggravated murder | OHIO REV. CODE § 2903.01(B)(F) | (1) The offense was committed while Petitioner was committing or attempting to commit or fleeing immediately after committing or attempting to commit kidnaping, rape, or aggravated robbery and Petitioner was the principal offender in the commission of the aggravated murder or if not the principal offender, committed the aggravated murder with prior calculation and design, a violation of OHIO REV. CODE § 2929.04(A)(7). (2) Firearm under Ohio Rev. Code § 145(A). |

---

[1]

Y-STRs are Short Tandem Repeat found in the male-specific Y-chromosome.  This coding gene is vital to male sex determination, spermatogeneisis and other mail related functions.  Y-STRS has been used to examine sexual assault evidence for the reason that any female DNA is completely ignored using this analysis (Docket No. 8-2, pp. 57-58 of 207; www.forensicdnacenter.com).

| 3 | Rape | OHIO REV. CODE § 2907.02(A)(2) | Firearm under OHIO REV. CODE § 2941.145(A). |
| 4 | Kidnaping | OHIO REV. CODE § 2905.01(A)(2) | Firearm under OHIO REV. CODE § 2941.145(A). |
| 5 | Kidnaping | OHIO REV. CODE § 2905.01(A)(3) | Firearm under OHIO REV. CODE § 2941.145(A). |
| 6 | Aggravated robbery | OHIO REV. CODE § 2911.01(A)(1)(C) | Firearm under OHIO REV. CODE § 2941.145(A). |

(Docket No. 8-1, pp. 1-4 of 162).

**B.    ARRAIGNMENT.**

On July 11, 2006, Petitioner was arraigned.  Appointed counsel acknowledged receipt of the copy of the indictment, waived its reading and any defect in time and service of the indictment.  Petitioner entered a plea of not guilty and the judge ordered that Petitioner be held without bail (Docket No. 8-1, p. 5 of 162).

**C.    VERDICT.**

After a jury trial, the jurors entered the following verdicts on May 22, 2009:

| COUNTS | OFFENSES | SPECIFICATIONS |
|---|---|---|
| 1 | Guilty of the lessor included offense of complicity in the commission of the offense of murder (Docket No. 8-1, p. 6 of 162) | Not guilty of having a firearm on or about his person or under his control during the commission of the offense of murder (Docket No. 8-1, p. 7 of 162) |
| 2 | Guilty of the lessor included offense of complicity in the commission of the offense of murder (Docket No. 8-1, p. 8 of 162) | Not guilty of having a firearm on or about his person or under his control during the commission of the offense of murder (Docket No. 8-1, p. 9 of 162) |
| 3 | Guilty of the offense of rape (Docket No. 8-1, p. 10 of 162). | Not guilty of having a firearm on or about his person or under his control during the commission of this offense (Docket No. 8-1, p. 11 of 162) |
| 4 | Guilty of the complicity in the commission of the offense of kidnaping (Docket No. 8-1, p. 12 of 162) | Not guilty of having a firearm on or about his person or under his control during the commission of this offense (Docket No. 8-1, p. 13 of 162) |
| 5 | Guilty of the offense of kidnaping (Docket No. 8-1, p. 14 of 162) | Not guilty of having a firearm on or about his person or under his control during the commission of the offense (Docket No. 8-1, p. 15 of 162) |

| 6 | Guilty of the offense aggravated robbery (Docket No. 8-1, p. 16 of 162) | Not guilty of having a firearm on or about his person or under his control during the commission of the offense (Docket No. 8-1, p. 17 of 162). |

### D.     SENTENCING.

On July 21, 2009, a sentencing hearing was held pursuant to OHIO REV. CODE § 2929. 19. After advising Petitioner of all rights pursuant to OHIO CRIM. R. 32, Judge John M. Durkin imposed periods of incarceration for the following offenses:

| COUNTS | SENTENCES | CONSECUTIVE OR CONCURRENT |
|---|---|---|
| 1 | Fifteen years to life in prison | |
| 2 | Fifteen years to life in prison | Consecutive to one another and consecutive to the sentence imposed in Case No. 05-CR-935[2]. |
| 3 | Ten years in prison | Consecutive to one another and consecutive to the sentence imposed in Case No. 05-CR-935. |
| 4 | Ten years in prison | Consecutive to one another and consecutive to the sentence imposed in Case No. 05-CR-935. |
| 5 | Ten years in prison | Consecutive to one another and consecutive to the sentence imposed in Case No. 05-CR-935. |
| 6 | Ten years in prison | Consecutive to one another and consecutive to the sentence imposed in Case No. 05-CR-935. |

Petitioner was ordered to serve an aggregate sentence of 55 years to life.  Post control release was imposed up to a maximum period of five years.  Petitioner was granted credit for 1,105 days served and advised of his appellate rights (Docket No. 8-1, pp. 18-20 of 162).

### E.     DIRECT APPEAL.

On May 17, 2010, Petitioner, by and through counsel, filed a merit brief asserting five assignments of error:

---

[2]

Found guilty by a Mahoning County, Ohio jury of felonious assault; having a weapon under his control during the commission of felonious assault; aggravated robbery and having a weapon under his control during the commission of aggravated robbery, Petitioner was ordered to serve a total of 21 years on May 25, 2006.  Http://courts.mahoningcountyoh.gov/pa/pa.urd/pamw2000.docket_1st?76572981.

1. *Miranda*--The prosecution's inquiry into Petitioner's post-arrest silence violated the Fifth and Fourteenth Amendments' right to remain silent.
2. *Crawford*--The trial court erred in allowing in hearsay testimony of an examining technician, through a DNA analyst, who did not examine DNA samples personally.
3. *Manifest weight*--The manifest weight of the evidence supported acquittal.
4. *Sufficiency*--The state failed to offer admissible evidence in support of Petitioner's rape conviction.
5. *Cumulative Error*--Multiple instances of error, combined, caused reversible error in Petitioner's case.

(Docket No. 8-1, p. 23 of 162).

The Mahoning County Court of Appeals for the Seventh District issued a decision on December 22, 2010, resolving Petitioner's assignments of error accordingly:

1. Considering the facts in this case, the court found that the prosecutor's statements during closing argument were not comments on post-arrest silence. Assuming for the sake of argument that there were comments on post-arrest silence, any error was harmless. This assignment of error lacks merit.
2. Petitioner's right of confrontation was not violated by the testimony of the technician regarding the results of the Y-STR testing. This assignment of error lacks merit.
3. It cannot be said that the jury in this case lost their way when considering any part of co-defendant Blackmon's testimony credible. The convictions are not against the manifest weight of the evidence and the assignment of error lacks merit.
4. Circumstantial evidence has the same probative value as direct evidence.
5. The cumulative error doctrine does not apply.

(Docket No. 8-1, pp. 94-112 of 162).

**F.      APPEAL TO THE SUPREME COURT OF OHIO.**

Petitioner, by and through counsel, filed a notice of appeal in the Supreme Court of Ohio on February 7, 2011 (Docket No. 8-1, pp. 114-116 of 162). In the memorandum in support of jurisdiction, Petitioner asserted that this case was of great public interest and involved a substantial constitutional question, specifically:

Only if the state lays a foundation unequivocally indicating that a testifying DNA technical personally performed a DNA test, may a Court accept that evidence not

6

in violation of the Sixth Amendment's Confrontation Clause[3].

(Docket No. 8-1, pp. 117-127 of 162).

On April 20, 2011, Chief Justice Maureen O'Connor of the Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question(Docket No. 8-1, p. 162 of 162).

G.    PETITION FOR WRIT OF HABEAS CORPUS.

In the Petition for Writ of Habeas Corpus filed in this Court on July 23, 2012, Petitioner, *pro se*, reasserted the five claims initially asserted on direct appeal:

1.    *Miranda*--The prosecution's inquiry into Petitioner's post-arrest silence violated the right to remain silent guaranteed by the Fifth and Fourteenth Amendments.
2.    *Crawford*--The trial court erred in allowing in hearsay testimony of an examining technician, through a DNA analyst, who did not examine DNA samples personally.
3.    *Manifest weight*--The manifest weight of the evidence supported acquittal.
4.    *Sufficiency*--The state failed to offer admissible evidence in support of Petitioner's rape conviction.
5.    *Cumulative Error*--Multiple instances of error, combined, caused reversible error in Petitioner's case.

(Docket No. 1).

## IV. THE STATUTE OF LIMITATIONS.

There is a one year statute of limitation that applies to the application of a writ of habeas corpus filed by a person in custody pursuant to a state court.  *Keeling v. Warden, Lebanon Correctional Institution*, 673 F.3d 452, 458 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 141 (2012)

---

[3]

Petitioner's argument is better explained in the memorandum in support of jurisdiction.  In particular, Petitioner argues that he had a right to confront and cross-examine any witness from whom the state drew accusatory testimony.  Petitioner objected to the admission of testimony of a DNA technician who did not perform the tests on the samples in the case.  Petitioner claims that he was deprived of the right to cross-examine the technician, a violation of the Confrontation Clause of the Sixth Amendment and *Melendez-Diaz v. Massachusetts,* 129 S. Ct. 2527, 2534 (2009) (Docket No. 8-1, pp. 124-127 of 162).

(*citing* 28 U.S.C. § 2244(d)(1)).  This statute of limitations begins to run from the latest of:

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* at 458-459 (*citing* 28 U.S.C. § 2244(d)(1)(A)–(D)).

In this case, the Magistrate applies Section (A).  The Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal on April 20, 2011.  Ninety days thereafter, the time to file a request for review on *certiorari* in the United States Supreme Court, expired.  The statute of limitations commenced on July 21, 2011.  Under Section 2244(d)(1)(A), the date on which the judgment became final by the expiration of the time for seeking such review, Petitioner had one year from July 21, 2011 to file a petition for habeas corpus.  Petitioner claims that he delivered the petition to prison authorities on July 17, 2012 for filing.  The Petition was presented to this Court on July 23, 2012.  The Magistrate considers Petitioner's Petition for Writ of Habeas Corpus timely filed.

## V.  THE LAWS OF PROCEDURAL DEFAULT AND WANT OF EXHAUSTION.

Under the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA), 28 U. S. C. § 2254, there are constraints placed on this federal habeas court before granting a timely filed application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  *Doan v. Carter*, 548 F. 3d 449, 454 (6th Cir. 2008) *cert. denied,* 130 S. Ct. 366 (2009) (*citing Williams v. Taylor*, *supra,* 120 S. Ct. at 1523).  In effect, habeas review is limited to non-

8

time barred claims for relief that have been fully exhausted in state court. *Id.*

The federal habeas court is not a forum for trying facts and issues which a petitioner failed to pursue in state proceedings. *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000). When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state court remedies were still available or due to a state procedural rule that prevented the state courts from reaching the merits of the claim, that claim is procedurally defaulted. *Id*. at 549-550. A federal court will review a defaulted claim only if a petitioner "show[s] that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default." *Id*. at 550.

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate "cause" for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Wogenstahl v. Mitchell,* 668 F.3d 307, 321 (6th Cir. 2012) (*citing Coleman v. Thompson*, 111 S.Ct. 2546, 2565 (1991)). The "cause" for default standard in procedural-default cases requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise a claim in the state courts. *Id.* (*citing McCleskey v. Zant,* 111 S.Ct. 1454, 1469 (1991) (internal quotation marks omitted)). Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available. *Id.* (*citing McCleskey*, at 1470).

The Sixth Circuit's seminal case applying the law of procedural default in federal habeas

9

cases in which the case is barred by petitioner's failure to observe the state procedural rule is *Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986).  The prejudice prong can be distilled from the Supreme Court's pronouncements and the case law interpreting those pronouncements.  *Id.*  First, it is clear that the prejudice that must be shown must be a result of the alleged constitutional violation and not a result of the trial counsel's failure to meet state procedural guidelines.  *Id.* (*See United States v. Frady*, 102 S.Ct. 1584, 1594 (1982) (prejudice must result from the errors of which defendant complained)).  Second, the burden is on the petitioner to show that he or she was prejudiced by the alleged constitutional error.  *Id.* (*citing Frady*, 102 S.Ct. at 1595).  Moreover, the petitioner must show that there was actual prejudice not merely a possibility of prejudice.  *Id*. (*See also Engle v. Isaac*, 102 S.Ct. at 1572).

Third, in analyzing a petitioner's contention of prejudice, the court should assume that the petitioner has stated a meritorious constitutional claim.  *Id.*  Thus, the examining court must examine whether the petitioner was prejudiced by his conviction based on allegedly insufficient evidence.  *Id.*

A fundamental miscarriage of justice results when one who is actually innocent is convicted.  *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011) *cert. denied,* 132 S. Ct. 1909 (2012).  "Actual innocence" is an extremely narrow exception, and "claims of actual innocence are rarely successful."  *Id.* (*citing Schlup v. Delo*, 115 S.Ct. 851, 864 (1995)).  Moreover, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Id.* (*citing Herrera v. Collins*, 113 S.Ct. 853, 862 (1993)).

## VI. THE RESULTS OF PETITIONER'S FAILURE TO OBSERVE THE PROCEDURAL RULES.

Petitioner was required to squarely present all of his claims in the Petition for Writ of

10

Habeas Corpus, describe operative facts and assert legal theories underlying his claims that he submitted in the state courts.  Failing to obtain consideration of his first, third, fourth and fifth claims, due to his failure to raise them in the Supreme Court of Ohio while the state court remedies were still available, prevents this Court from reaching the merits of these claims. Petitioner's first, third, fourth and fifth claims are deemed exhausted because collateral relief is unavailable.  The analysis is complete once the Magistrate goes through the complicated analysis under *Maupin's* four-part test.

    A.       THE FIRST AND SECOND PRONGS OF *MAUPIN* APPLIED TO THIS CASE.

Petitioner fails to invoke the *Maupin* test as it applies to his first, third, fourth and fifth claims.  The Magistrate finds that the first and second *Maupin* prongs are easily satisfied because of the doctrine of *res judicata*.

It is well established that under Ohio's doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial on the merits, or on appeal from that underlying judgment.  *State v. Perry*, 10 Ohio St. 3d 175, 180, 226 N. E. 2d 104, 108 (1967). Thus, unless a claim is based on evidence outside of the record, it must be raised during the appeal or it is deemed waived.  *Id.*

Applying the first and second prongs of the *Maupin* test, Petitioner's first, third, fourth and fifth claims are barred from merit review since they could have raised on appeal or during post-conviction proceedings.  Accordingly, these claims are considered waived.  At this juncture, there is an absence of available state corrective process as required by 28 U. S. C. § 2254(b).

11

**B.**     THE THIRD *MAUPIN* FACTOR APPLIED TO THIS CASE.

Petitioner fails to present an argument that the *Perry* doctrine is not an adequate and independent state procedural ground.

To be adequate, a state procedural rule must be firmly established and regularly followed. *Parker v. Bagley,* 543 F.3d 859, 861 (6th Cir. 2008) (*citing Fautenberry v. Mitchell*, 515 F.3d 614, 640 (6th Cir.2008) *cert. denied*, 129 S. Ct. 412 (2008) (*quoting Hutchison v. Bell*, 303 F.3d 720, 737 (6th Cir.2002) *cert. denied,* 123 S. Ct. 2608 (2003)).  To determine whether the state rule is adequate, the court must consider whether the "adequate and independent state procedural bar [was] 'firmly established and regularly followed' by the time as of which it [was] to be applied." *Id.* at 641 (*citing Fautenberry*, *supra*) (*quoting Ford v. Georgia*, 111 S.Ct. 850, 857 (1991) (emphasis added in *Fautenberry, supra*)).  The Sixth Circuit has specifically held that the application of the *res judicata* doctrine in criminal cases, as enunciated in *Perry*, is an adequate and independent state ground.  *Buell v. Mitchell*, 274 F. 3d 337, 348 (6th Cir. 2001).  Since Petitioner failed to present his first, third, fourth and fifth claims to the Supreme Court, he violated Ohio's doctrine of *res judicata* and committed procedural default.

The Magistrate presumes that the adequate and independent state ground doctrine requires the federal court to honor a state court holding that is a sufficient basis for the state court's judgment.  Here, the state court would enforce the firmly established and regularly followed procedural bar to any of Petitioner claims, resting its decision not only on the application of *res judicata* but also on the court's limited jurisdiction.  The third prong of the *Maupin* test is easily satisfied.

**C.**     CAUSE AND PREJUDICE AND MISCARRIAGE OF JUSTICE.

Having determined that Petitioner's habeas claims have been procedurally defaulted, a

12

determination must be made as to whether Petitioner established the requisite "cause and prejudice" or that a fundamental miscarriage of justice will result if the Court enforces the procedural default in his case.  Petitioner failed to file a traverse and there are no particularized showings in his pleadings that suggest some objective factor external to the defense that impeded the ability to raise his claims in the state court.  Since "cause" has not been shown, the Magistrate need not reach the issue of prejudice.

Even though Petitioner has not shown "cause and prejudice," he may still be entitled to have his clams heard on the merits if he can show that failure to do so would result in a fundamental miscarriage of justice.  Petitioner failed to meet this narrow exception reserved for and explicitly tied to actual innocence.  No new evidence was presented to support a claim of actual innocence.  Accordingly, Petitioner is bound by his procedural default and he cannot obtain merit review of his first, third, fourth and fifth grounds for relief.  Petitioner presented his second claim on direct appeal and in a memorandum to invoke the jurisdiction of the Supreme Court of Ohio.  The second claim is therefore exhausted, not subject to procedural default but subject to merit review.

### VII. HABEAS STANDARD OF REVIEW.

A timely filed application for a writ of habeas corpus on behalf of a person in custody shall not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim—

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (Thomson Reuters 2013).

A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Holder v. Palmer*, 588 F. 3d 328, 343 (6th Cir. 2009) (*citing Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000)).  A state court decision will be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases.  *Id.* (*citing Williams*, 120 S.Ct. at 1523) (emphasis added).

A decision is an unreasonable application of clearly established federal law if it identifies the correct principle of law but unreasonably applies it. *Williams v. Coyle,* 260 F.3d 684, 699 (6th Cir. 2001) (*See Williams v. Taylor, supra*, 120 S. Ct. at 1519).  An unreasonable application of federal law is different from an incorrect application of federal law.  *Id.*  Under Section 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  *Id.*  Rather, that application must also be unreasonable.  *Id.* (*citing Williams v. Taylor, supra*, 120 S.Ct. at 1521) (original emphasis)).

As a condition for obtaining habeas relief from the federal court, a state prisoner must show that the state court's decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011).  This bar is difficult to meet because "'habeas corpus is a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Id.* (*citing Jackson v. Virginia*, 99 S.Ct.

2781, 2795, n.5 (1979)).

## VIII. DISCUSSION.

The Magistrate finds that in ground two of the direct appeal, Petitioner argued:

The trial court erred in allowing in hearsay testimony of an examining technician, through a DNA analyst who did not examine DNA samples personally.

The substance of this claim was presented to the Supreme Court of Ohio.

"Only if the state lays a foundation unequivocally indicating that a testifying DNA technical personally performed a DNA test, may a Court accept that evidence not in violation."

### A.   ADMISSIBILITY OF THE TECHNICIAN'S HEARSAY TESTIMONY AND THE RIGHT TO CONFRONT WITNESSES.

In the only ground for relief that is not procedurally defaulted, Petitioner argues that his conviction for rape is void because it is based on inadmissible hearsay.  In the alternative, the trial court undermined the confidence in the fundamental fairness of the verdict against him by depriving him of the right to confront the forensic scientist who actually analyzed the forensic evidence against him.

The Magistrate finds that Petitioner misinterpeted the testimony of Cassie Johnson.  The State established that Ms. Johnson, an employee at Orchid Cellmark, a provider of forensic DNA identity testing services, was the actual forensic scientist who performed the Y-STR tests on samples collected from Ms. Slaton and Petitioner.  Thus, her in-court testimony about how she performed the tests was not hearsay.

While performing the Y-STR tests, Ms. Johnson generated reports that were made pursuant to established procedure and maintained in the ordinary course of business by Orchid Cellmark (Docket No. 8-2, pp. 58-61 of 207).  An appropriate foundation was made for the admissibility of the records and they were authenticated.  Accordingly, the records from which

15

Ms. Johnson testified were an exception to the hearsay rule.

Even if the trial court erred in applying the rules of evidence, this Court cannot provide the habeas relief requested. Petitioner can only be granted relief if he is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. This Court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Sanborn v. Parker,* 629 F.3d 554, 575 (6th Cir. 2010) (*citing Estelle v. McGuire*, 112 S.Ct. 475, 479 (1991)). It is not within the province of a federal habeas court to reexamine state-court determinations on state-law questions. *Id.* (*citing Estelle*, 112 S.Ct. at 479). Errors in the application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus. *Id.* (*citing Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983)).

Here, forensic evidence was properly admitted into evidence that did not exclude Petitioner as the predominant contributor of the male DNA detected from the sperm fraction on the vaginal swab taken from Ms. Slaton (Docket No. 8-2, pp. 66-67 of 207). Petitioner has not demonstrated that this admissible testimony unfairly impugned him or was egregiously misleading as determined by the Supreme Court. This challenge to the admissibility of evidence pursuant to state law does not raise a concern of constitutional magnitude and therefore, it can be no part of federal habeas review.

Petitioner's corollary argument is that in admitting the testimony of the forensic scientist's supervisor, he was deprived of the Sixth Amendment right to confront witnesses against him. The Sixth Amendment does guarantee a criminal defendant the right to confront the prosecution's witnesses through cross-examination, *Jordan v. Warden, Lebanon Correctional Institution*, 675

16

F.3d 586, 593 (6th Cir. 2012) (*citing Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir.2000)), as well as "a meaningful opportunity to present a complete defense," *Id.* (*citing Crane v. Kentucky*, 106 S.Ct. 2142, 2146 (1986) (internal quotation marks omitted)).

A typical confrontation-clause violation occurs when the witness is unavailable and the defendant did not have an opportunity to cross-examine the witness regarding the proffered testimony. *Id.* (*citing Crawford v. Washington*, 124 S.Ct. 1354, 1365 (2004) (explaining that the "admission of testimonial statements of a witness who did not appear at trial" constitutes a confrontation-clause violation "unless [the witness] was unavailable to testify, and the defendant had a prior opportunity for cross-examination")).

As previously stated, this argument is based on misinformation.  Ms. Johnson, not her supervisor, testified that she conducted the analysis on the samples collected from Petitioner.  Contemporaneously with her analysis, Ms. Johnson prepared the forensic report.  Petitioner's counsel had an opportunity to cross-examine Ms. Johnson and in fact, counsel conducted a probing cross-examination of Ms. Johnson, covering most of the topics raised in her direct examination (Docket No. 8-2, pp. 73-105 of 207).  The Magistrate concludes that Petitioner's argument regarding the Confrontation Clause violation must fail.

**B.**     **POST-ARREST SILENCE**.

Relying on *Doyle v. Ohio*[4], Petitioner maintains that he is entitled to habeas relief because the prosecutor commented on his post-arrest silence during the case in chief and during the closing argument.

---

[4]

The Supreme Court of the United States decided that the state prosecutor's use of the defendant's post-arrest silence in seeking to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving *Miranda* warning, violated due process.  96 S. Ct. 2240, 2241 (1976).

17

The court of appeals determined that Petitioner was mistaken, that the prosecutor's statements were proper and even if they were not proper, the error created by the prosecutor's statements, was harmless.  Without deciding whether the line of questioning or the closing argument improperly referred to Petitioner's post-*Miranda* silence, the Magistrate finds that there is no mention of Petitioner's post-arrest silence in opening or closing arguments (Docket No. 8-2, pp. 30-38 of 207; Docket No. 8-5, pp. 47-67 of 174).  The prosecutor did comment in his "final closing argument" that the "defense counsel can cross-examine all witnesses; however, there was no cross-examination regarding the defendant not making those statements" (Docket No. 8-5, p. 100 of 174).

Assuming for the sake of argument that this comment was improper, Petitioner has only met part of the test.  Habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' "  *Johnson v. Konteh,* 597 F.Supp.2d 747, 754 (N.D.Ohio,2009) (*citing Brecht v. Abrahamson*, 113 S.Ct. 1710, 1721-1722 (1993)).  Under the actual prejudice standard, courts deem an error harmless unless it "had a substantial and injurious effect or influence in determining the jury's verdict."  *Id*. (*citing Brecht*, 113 S. Ct. at 1720) (*quoting Kotteakos v. United States*, 66 S.Ct. 1239, 1253 (1946)).  This standard of review requires a reviewing court to examine the effect of the error on the jury rather than the sufficiency of the evidence at trial.  *Id.* (*citing Madrigal v. Bagley*, 276 F.Supp.2d 744, 769 (N.D.Ohio 2003)).  However, if the matter is so evenly balanced that the court has "grave doubt" as to the harmlessness of the error, it should treat the error not as if it were harmless, but as if it affected the verdict.  *Id.* (*citing O'Neal v. McAninch*, 115 S.Ct. 992, 995 (1995)).

Respondent argues that any error resulting from the prosecutor's inquiry and/or comments was harmless because it did not have a substantial and injurious effect or influence on the

sentence of the case. The Magistrate agrees. Petitioner has failed to show that the publication of the comment in question resulted in actual prejudice to the outcome of the trial. It is impossible to ascertain if the jury drew an adverse inference from the prosecutor's comment and based upon review of the pleadings, the Magistrate does not have grave doubt that the error was harmless. In all reasonable probability, the verdict would not have been different if the comment had not been made.

Petitioner cannot prevail simply because he makes the argument. He must show that the improper comment rendered the trial fundamentally unfair. Neither has Petitioner shown that the Ohio appellate court's decision finding Petitioner's comments on post-arrest silence harmless, is a decision that was contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

C.    PETITIONER'S MANIFEST WEIGHT OF THE EVIDENCE CLAIM.

Petitioner's third claim, that his conviction was not supported by the manifest weight of the evidence, was presented on direct appeal but abandoned in the appeal to the Supreme Court of Ohio. The Magistrate has already determined that since Petitioner failed to show cause and prejudice or a miscarriage of justice, the sufficiency claim is procedurally barred from this Court's review. However, even if Petitioner had not procedurally defaulted a "manifest weight of the evidence" claim, the claim does not raise a federal constitutional question. A "manifest weight of evidence" claim, which is based on a state law concept that 'is both quantitatively and qualitatively different from a constitutional due process sufficiency of evidence standard, raises an issue of state law only. *Ladd v. Tibbals,* 2012 WL 5364242, *7 (N.D.Ohio,2012) *adopted by* 2012 WL 5364406 (N.D.Ohio,2012) (*citing Brown v. Moore*, 2008 WL 4239160, *8 (S.D.Ohio 2008) (*citing* 28 U.S.C. § 2254(a); *Pulley v. Harris*, 104 S.Ct. 871, 874 (1998)).

The question of whether a verdict is against the manifest weight of the evidence is one of state law and, to the extent that this federal habeas Petitioner bases a claim upon state law, such a claim does not state a cognizable basis for habeas relief.  An alleged violation of state law can serve as a basis for federal habeas relief only if Petitioner can show that there was a denial of "fundamental fairness" in the trial.  Petitioner's manifest weight challenge fails to include such an argument.  To the extent that Petitioner's "manifest weight of the evidence claim" only raises an issue of state law, it is not cognizable in this federal habeas corpus proceeding.

### D.     PETITIONER'S SUFFICIENCY OF THE EVIDENCE ARGUMENT.

Petitioner challenged the sufficiency of the evidence used to support his conviction for rape.  Having already determined that the main thrust of this argument is procedurally defaulted, the Magistrate has considered the sufficiency of evidence in this federal habeas corpus proceeding only to ensure the constitutional requirement prohibiting Petitioner's criminal conviction is based upon proof of guilt beyond reasonable doubt.

A conviction is supported by sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Pinchon v. Myers,* 615 F.3d 631, 643-644 (6th Cir. 2010) *cert. denied,* 131 S. Ct. 2151 (2011) (*citing Jackson v. Virginia*, 99 S.Ct. 2781, 2789 (1979) (emphasis in original)).  In a habeas proceeding, the court will not simply conduct a *de novo* review of the state court's application of that rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of AEDPA.  *Id.* (*see Getsy v. Mitchell*, 495 F.3d 295, 315–416 (6th Cir.2007) (en banc) *cert. denied*, 128 S.Ct. 1475 (2008) ("Whether [the petitioner] is entitled to habeas relief ultimately depends on whether the

20

[state court]'s denial was based on an unreasonable application of clearly established federal law regarding the sufficiency of the evidence.")).   The court must determine whether it was objectively unreasonable for the state court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that the petitioner committed the essential elements of the crimes charged beyond a reasonable doubt.  *Id.* (*See Nash v. Eberlin*, 258 Fed.Appx. 761, 765 (6th Cir.2007)).

When reviewing whether the appellate court state court's determination was objectively unreasonable, the Magistrate finds that there are three critical pieces of evidence upon which the conviction of rape is based.  First, the State argued that all of the acts leading up to Ms. Slaton's death were based on Petitioner's need to inflict harm on Mr. Baty for his dismissal of him as a friend.  Second, Mr. Blackmon testified that Petitioner had a gun; that he witnessed Petitioner brandish the gun at Ms. Slaton's head; that he saw Petitioner and Antonio Jackson drag Ms. Slaton down the embankment at Lake McKelvey and that he heard a gun discharge while Petitioner, Antonio Jackson and Ms. Slaton were down by the lake (Docket No. 8-3, pp. 38-42; 45-47; 82-84; 105-106 of 214).  Third, although the forensic scientist, Ms. Johnson, could not uniquely identify Petitioner as the contributor of male DNA in Ms. Slaton's body, she could not exclude him as the predominant contributor of male DNA collected from the sperm fraction of the vaginal swab taken from Ms. Slaton's body (Docket No. 8-2, pp. 67-71, 102 of 207).

Upon hearing all of the evidence, a reasonable jury could have concluded that Petitioner's participation in the rape of Ms. Slaton was a premeditated and intentional act, incidental to obtaining revenge against Mr. Baty.  There is sufficient evidence from which a rational decision-maker could convict Petitioner of rape.

**E**      **CUMULATIVE ERROR.**

In his final argument presented on direct appeal but not to the Supreme Court of Ohio, Petitioner argued that there were multiple instances of error which if combined, caused reversible error in his case. The court of appeals determined that the doctrine of cumulative error was inapplicable because Petitioner was unable to show that multiple instances of harmless error existed. Even if this claim had not been procedurally defaulted, Petitioner has failed to provide authority from the Supreme Court that distinct constitutional claims can be cumulated to grant habeas relief.

Errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair. *Gillard v. Mitchell,* 445 F.3d 883, 898 (6th Cir. 2006) *cert. denied,* 17 S.Ct. 1485 (2007) (*citing Walker v. Engle*, 703 F.2d 959, 963 (6th Cir.1983). However, the Supreme Court has not determined that distinct constitutional claims can be cumulated for purposes of granting habeas relief. *Id.* (*citing Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.2002) (italics added) *cert. denied,* 123 S.Ct. 1621 (2003)). Thus, the Ohio courts' determination is not contrary to, or an unreasonable application of, clearly established Federal law as determined by the United State Supreme Court because a petitioner's individual assignments of error will not support habeas relief, and the cumulative effect thereof is similarly insufficient. *Id.* (*See Scott v. Elo*, 302 F.3d 598, 607 (6th Cir.2002) *cert. denied,* 123 S. Ct. 1272 (2003)).

The Magistrate cannot find any errors, harmless or otherwise, which when accumulated denied Petitioner a fair trial. The court of appeals' decision that the doctrine of cumulative error was inapplicable is supported by the evidence as none of the five errors Petitioner detailed here

22

were contrary to, nor resulted in an unreasonable application of federal law.

### VIII. CONCLUSION.

For these reasons, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus, deny the certificate of appealability and terminate the referral to the undersigned Magistrate Judge.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:          May 20, 2013

### IX. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466

(1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.